**UNITED STATES of America,**
**Plaintiff,**

v.

**OWENS–CORNING FIBERGLAS CORPORATION, Owens-Illinois Glass Company, and Corning Glass Works, Defendants.**

**Civ. No. 5778.**

United States District Court
N. D. Ohio, W. D.
Nov. 19, 1959.

Donald F. Melchior, Atty. Dept. of Justice, Antitrust Division, Washington, D. C., Russell Ake, U. S. Atty., Cleveland, Ohio, Richard Colasurd, Asst. U. S. Atty., Toledo, Ohio, for plaintiff.

William A. Belt, Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, for defendant Owens-Corning Fiberglas Corp.

KLOEB, Chief Judge.

On June 23, 1949, an entry of final judgment was filed in the above numbered case. The complaint in the case stated a cause against the defendants under Section 2 of the Act of Congress of July 2, 1890, commonly known as the Sherman Act, as amended, 15 U.S.C.A. § 2.

The entry of final judgment reads in part as follows:

"The Plaintiff, United States of America, having filed its amended complaint herein on July 16, 1948; the defendants Owens-Corning Fiberglas Corporation, Owens-Illinois Glass Company, and Corning Glass Works, having appeared and filed their consolidated answer to the amended complaint denying the violation of law charged therein; and the plaintiff and said defendants by their attorneys having severally consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law herein and without admission of any party defendant in respect of any such issue;

"Now, Therefore, before any testimony has been taken herein, and without trial or adjudication of any issue of fact or law herein, and upon consent as aforesaid of all the parties hereto, it is hereby Ordered, Adjudged and Decreed as follows:

\*       \*       \*       \*       \*       \*

"II.

\*       \*       \*       \*       \*

"(N) 'Glass fiber products' means articles which are manufactured by or for producers of glass fibers and which are made from or contain glass fibers in the usual commercial forms, including glass wool, glass textiles, and glass fiber mat.

\*       \*       \*       \*       \*       \*

"XI.

"Each of the defendants Owens-Illinois and Corning, so long as it owns or controls any shares of stock or other financial interest in Owens-Corning, and defendant Owens-Corning, is hereby enjoined and restrained from acquiring, directly or indirectly, any ownership interest, by purchase or acquisition of assets or of securities or otherwise, in any person engaged in whole or in part in the manufacture, sale or distribution of glass fibers or glass fiber products in the United States, or from leasing, or from acquiring any control over, any such person.

\*       \*       \*       \*       \*       \*

"XVI.

"Jurisdiction is retained for the purpose of enabling any of the parties to this judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this judgment or for the modification or termination of any of the provisions thereof, and for the purpose of the enforcement of compliance therewith and the punishment of violations thereof."

On September 21, 1959, ten years and three months after the entry of the final judgment, defendant Owens-Corning Fiberglas Corporation filed its application pursuant to the above article XVI for an order construing or modifying article XI of the judgment, in furtherance of a proposed acquisition by applicant of the business and assets of a number of companies collectively referred to as "Alsynite".

The application recites that the proposed acquisition is sought in order to enable applicant to commence the manufacture of plastic construction panels which are reinforced with glass fiber mat, and in order to commence the manufacture of these panels applicant proposes to acquire the assets and business of Alsynite, which is one of six of the leading manufacturers of plastic construction panels. The fiber glass mat used as the basis or reinforcement of the plastic construction panels is manufactured by applicant and, from the record, applicant appears to be the chief manufacturer of fiber glass mat that is furnished to approximately sixty companies that are engaged in the manufacture of plastic construction panels, which are a rigid, structurally stable, building material made by subjecting plastic, containing glass fiber mat as a reinforcing agent, simultaneously to heat and pressure to form a dense, tough slab of predetermined shape and size. These panels are in competition, in the construction market, with steel, aluminum, ply-wood and glass. They have the advantage of being translucent.

In furtherance of the consent judgment entered on June 23, 1949, applicant herein licensed Pittsburgh Plate Glass Company and Johns-Manville Corporation to use its patents and, subsequent thereto, the Johns-Manville Corporation acquired Glass Fibers Company from the Libbey-Owens-Ford Glass Company and is now engaged in the manufacture of fiber glass mats which it supplies to its subsidiary, Corrulux, for the manufacture of plastic construction panels. Its offering of fiber glass mats to any of the sixty manufacturers of such panels is exceedingly limited. Pittsburgh Plate Glass Company is not now engaged in the manufacture of fiber glass roving or mats. It thus appears that applicant is looked to by the trade for substantially all of their supply of fiber glass mats and, through the acquisition of Alsynite, applicant desires to enter the field of processing and manufacturing these plastic construction panels.

Applicant takes the position, and properly so, that the only questions for determination under its application are, first, whether the judgment as written covers the proposed acquisition, and, second, if it does so cover, whether the judgment should be modified so as not to prohibit by its terms such acquisition of Alsynite in view of changes of circumstances that are alleged to have occurred since 1949. It is the position of applicant that the judgment should be construed as not including plastic construction panels within the definition of glass fiber products, but as including only those products which were glass fiber products at the time the judgment was entered.

It is conceded that at the time the judgment was entered the glass fiber industry was then in its infancy, and that, while there are thousands of uses that have developed for glass fiber products, many of these uses have been developed since 1949, and included in these new uses is the employment of glass fiber mats in the manufacture of plastic construction panels.

Applicant desires the acquisition of Alsynite because it will provide applicant with manufacturing facilities and know-how respecting plastic construction panels and will enable applicant to intensify its marketing efforts for such panels because the Alsynite distribution system will provide applicant with access to ultimate customers for such panels. It is frankly conceded that it is the acquisition of the customers of Alsynite that is the prime consideration in desiring to purchase Alsynite in its entirety.

On October 5, 1959, the Government filed its memorandum in opposition to the application filed herein. It opposes the application on the grounds that, first, the proposal is prohibited by the clear language of articles XI and II (N) of the final judgment, and second, modification of the final judgment is not warranted on the basis of the facts set forth in the application, and third, the proposal, if consummated, would be contrary to the public interest and the spirit of the antitrust laws and would raise serious questions under Section 7 of the Clayton Act, 15 U.S.C.A. § 18.

■ In its memorandum, the Government takes the position that the plastic construction panels are a "glass fiber product" within the meaning of article II(N) and that, therefore, the proposal of applicant comes squarely within article XI of the final judgment and is prohibited by it. With this position we agree and, in view of the provisions of these articles, we are of the opinion that the proposed acquisition does come within the prohibition of the final judgment and is forbidden by it.

On the question of the proposed modification of the final judgment, the Government takes the position, as heretofore stated, that such modification is not warranted on the basis of the facts set forth in the application.

On October 20, applicant filed a memorandum in reply to the memorandum of the Government and, after the filing of numerous affidavits and letters which were later admitted in evidence, the application was set for hearing and was heard on October 22, 1959. On that date, a number of witnesses were offered by the Government and a number of exhibits were offered by both parties and admitted by the Court.

We come, therefore, to the question of whether or not, under the state of the record, modification of the final judgment would be warranted on the ground that the manufacture of plastic construction panels through the use of fiber glass mats is a new use not contemplated at the time of the entry of the final judgment; that to forbid the acquisition of Alsynite would work a hardship upon applicant in view of the fact that at least one of applicant's competitors, to wit, the Johns-Manville Corporation, is free to proceed with the manufacture of the plastic construction panels through the acquisition of Glass Fibers Company, unfettered by the restrictions of a consent judgment such as binds the applicant; that applicant is, therefore, placed at a competitive disadvantage with the Johns-Manville Corporation and perhaps others, including Pittsburgh Plate Glass, that may in the future desire to enter the field of the manufacture of plastic construction panels. Applicant concedes that it intends to enter this field of activity whether the acquisition of Alsynite is permitted or not, and that to set up facilities for the manufacture of the plastic construction panels would not be an intricate or expensive procedure, but that the know-how and customers of Alsynite would be of great benefit to applicant when it does enter the field.

We find the case of United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999, to be very helpful in our search for guiding precedents.

In this case, which was a Sherman Act case brought by the Government against the leading meat packers in the country, a consent decree was entered on February 27, 1920, and, on April 12, 1930, approximately ten years and two months after the entry of the decree, two of the defendants, Swift & Co. and Armour & Co., and their subsidiaries,

filed a petition to modify the consent decree and to adapt its restraints to the needs of a new day. On January 31, 1931, the decree was modified by a lower Court and such modification became the subject of appeal.

Mr. Justice Cardozo delivered the opinion of the Court on May 2, 1932, and, 286 U.S. on page 115, 52 S.Ct. on page 462, we find the following:

"Power to modify existing, we are brought to the question whether enough has been shown to justify its exercise.

"The defendants, controlled by experienced business men, renounced the privilege of trading in groceries, whether in concert or independently, and did this with their eyes open. * * * *",

and, 286 U.S. on page 119, 52 S.Ct. on page 464, we find the following:

"There is need to keep in mind steadily the limits of inquiry proper to the case before us. We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making. We are not at liberty to reverse under the guise of readjusting. Life is never static, and the passing of a decade has brought changes to the grocery business as it has to every other. The inquiry for us is whether the changes are so important that dangers, once substantial, have become attenuated to a shadow. No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression. Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned."

The decree modifying the injunction was accordingly reversed.

▮ We are of the opinion that, in view of the tight requirements laid down in the Swift and Co. case, and in view of the record that is before us under this application, this Court would not be warranted in decreeing a modification of the judgment so as to permit the acquisition of Alsynite. Despite the fact that applicant stresses that it would limit the effects of a modification to the particular new use of the glass fiber product that is in mind here, we feel that this could not be done in view of the fact that it is conceded that thousands of new uses have not only been introduced in very recent years but that undoubtedly it is anticipated and hoped for that many new uses will be employed in the years to come. A modification that would relinquish the requirements of the decree for this one purpose would, therefore, go to the very heart of the prohibitions that were consented to in the final judgment and would, in effect, virtually nullify a great portion of it.

We believe that, if applicant desires to enter the field of manufacture of plastic construction panels, it would be better to do so without treading upon or attempting to modify the restrictions of the consent judgment. The application is denied. An order may be drawn accordingly.